IN THE

# SUPREME JUDICIAL COURT,

IN THE

## COUNTIES OF WASHINGTON AND AROOSTOOK.

### ARGUED AT JULY TERM, 1844.

## Moses Tuttle *versus* Salmon Gates,

When a case is presented on a motion or petition for a new trial, or for a review, for any cause not arising out of an illegal or erroneous act of the Court, a new trial cannot be claimed as a matter of right; but may be granted or refused by the Court in the exercise of its legal discretion. And in such case, it may be granted on such terms and conditions, as the Court may consider reasonable.

But when a case has been reserved on the report of the presiding Judge, or presented on a bill of exceptions, and it has been ascertained that the instructions to the jury were erroneous, or that illegal testimony was admitted, or that legal evidence, material to the issue, was excluded, the party, if aggrieved, would seem to be entitled to a new trial as a matter of right; the Court can impose no conditions, unless it has acquired some authority from his consent; and if a new trial is granted, the whole case should be opened for trial.

The Lord's day is not to be reckoned as one of the four days during which an officer must keep goods after seizure on execution before the sale.

A sale of goods, made by an officer on execution, must be regarded as a legal transfer of the property, although he may not have conformed to the requirements of the statute in making the sale.

But this principle may not apply to the sale by an officer of any description of personal property, not tangible, and represented only by documentary evidence of title.

Any person injured by any such irregular proceedings of an officer may, by an action against him, obtain redress.

Trover for a dwellinghouse. The case had been once tried, and the verdict had been set aside and a new trial granted. The order for a new trial was sent from the county of

Cumberland; and under the name of the action in the county of Washington was entered, "verdict set aside and new trial granted." The entry of the clerk upon his docket was in the words of the order. The house had been put upon land of a person other than the one who erected it, with the consent of the owner of the land. Both parties claimed the house, as personal property, under the same person; the defendant, under a sheriff's sale on execution, and the plaintiff, under a bill of sale from the debtor. . The facts sufficiently appear in the opinion of the Court.

*J. Granger,* in his argument for the plaintiff, on the point that the presiding Judge erred in ruling that the whole case was open for trial, cited *Robbins* v. *Townsend,* 20 Pick. 345; *Winn* v. *The Columbian Ins. Co.* 12 Pick. 288; *Williams* v. *Henshaw,* 12 Pick. 378.

On the point, that the title under which the defendant claims failed, because the officer had kept the property but three legal days before the sale, as to make out the four days he must include the Lord's day, which the law does not permit; he cited *Windsor* v. *China,* 4 Greenl. 304; *Brown* v. *Maine Bank,* 11 Mass. R. 153; *Hale* v. *Owen,* 2 Salk. 225; *Daveis* v. *Salter,* 2 Salk. 627; *Lee* v. *Carlton,* 3 T. R. 642; *Soloman* v. *Freeman,* 4 T. R. 555; *Thayer* v. *Felt,* 4 Pick. 354. That the officer had no right to adjourn the sale in the manner he did. 7 Greenl. 376; 5 Pick. 186.

*Fuller* argued for the defendant; and on the point, that setting aside a verdict necessarily opened the whole case, cited *Sawyer* v. *Merrill,* 10 Pick. 16, and cases there cited; Howe's Prac. 519.

On the point that the defendant acquired a valid title to the property under the sheriff's sale on execution, he cited *Richards* v. *Russell,* 2 Fairf. 371; Stat. 1821, c. 60, § 5; *Caldwell* v. *Eaton,* 5 Mass. R. 404.

*Preble,* for the plaintiff, replied.

The opinion of the Court was drawn up by

SHEPLEY J. — A verdict was found on a former trial of

this case for the plaintiff. Upon a case reserved the opinion of the Court stated in substance, that the verdict was to be set aside, only for the purpose of having the jury find whether the administrator of John R. Tuttle had become the owner of the house. The entry made upon the clerk's record was " verdict set aside and new trial granted." When the case was presented for a second trial, the presiding Judge considered the former verdict as entirely set aside, and the case as open for trial, *de novo.* When a case is presented on a motion or petition for a new trial, or for a review, for any cause not arising out of an illegal or erroneous act of the Court, a new trial may be granted or refused by the Court in the exercise of its legal discretion. It cannot be claimed as a matter of right. And in such cases, it may be done upon such terms or conditions imposed, as the Court may consider reasonable. And such appears to have been the practice. *Hutchinson* v. *Piper*, 4 Taunt. 555 ; *Thwaites* v. *Sainsbury* ; 7 Bing. 437 ; *Winn* v. *Columbian Ins. Co.* 12 Pick. 288. In the latter case the verdict appears to have been set aside only for the purpose of assessing damages upon a partial loss, " the plaintiffs consenting, that a verdict shall be entered for a partial loss, and the inquiry before the jury be confined to the question of amount." When a case has been reserved on a report of the presiding Judge, or presented by a bill of exceptions, and it has been ascertained, that the instructions of the jury were erroneous, or that illegal testimony was admitted, or that legal testimony material to the issue was excluded, the party, if aggrieved, would seem to be entitled to a new trial as a matter of right ; and the Court can impose no conditions, unless it has acquired some authority from his consent to dispose of the case otherwise. If the Court may in this class of cases open a case again for the trial of a particular point without disturbing the general verdict, it should possess the power to form a new issue without the consent or action of the parties. Or, if the verdict be entirely set aside, a right to limit the inquiry to a particular point, although other points vitally affecting the merits, and presented as issues to be tried by the plead-

ings, might be insisted upon. Such a power would scarcely be claimed by a Court governed solely by the rules of the common law. The case of *Robbins* v. *Townsend,* 20 Pick. 345, might seem to claim for the Court some such authority. From the language used, it does not appear to be certain, whether it was intended, that the verdict should be set aside, and the parties be restrained from the exhibition of testimony except to one point, or that the general verdict should remain undisturbed, and a new issue be formed for the trial of that point. This Court does not feel authorized to assume the exercise of such a power. And if it had the power to limit the inquiry to a particular point, it does not appear to have exercised it in such a manner, that the parties would be bound by it. The verdict appeared to have been set aside by the whole Court without any limitation or condition, exhibited by the record; and the presiding Judge could not properly be guided by any thing but the record.

On coming to a consideration of the merits, the counsel for the plaintiff insist upon only one of the objections taken at the trial. That is, that the sale of the house, made by the sheriff on the execution, did not transfer the property to the purchaser. The principal objection to the sale is, that the property was not kept four days after seizure before it was offered for sale, because one of those days was the Lord's day. To consider that day as liable to be reckoned as one of the four is attended with serious difficulty, as intimated in the case of *Thayer* v. *Felt,* 4 Pick. 354. The day of seizure is not to be reckoned as one of the four, and the sale cannot be legally made after the fourth day. *Windsor* v. *China,* 4 Greenl. 304; *Caldwell* v. *Eaton,* 5 Mass. R. 404. As the goods cannot be legally sold on the Lord's day, if that day be not excluded in the enumeration of the four days, the property of the debtor cannot be effectually seized on Wednesday. And it is difficult to perceive, that the adjournment of the sale could be legally made before the fourth day. If the Court must come to these conclusions, it will not necessarily follow, that the plaintiff will be entitled to recover. The purchaser

may, in certain cases, acquire a title to the property sold, although the proceedings of the officer, in making the sale, may not have been in strict conformity to the requirements of the statute. It will be difficult to reconcile all the *dicta* respecting this matter found in different opinions. In the case of *Titcomb* v. *Union Marine & Fire Insurance Company*, 8 Mass. R. 335, it is asserted by Sewall J., that the purchaser's title to tangible property, capable of visible possession and delivery, would be good against the debtor notwithstanding any irregularities in the proceedings of the officer in making the sale. So in the case of *Howe* v. *Starkweather*, 17 Mass. R. 243, Parker J. appears to admit the general rule to be as above stated, and he enforces it by saying, " purchases would not be made, and the interest of both debtor and creditor would suffer, if sales made by one having lawful authority, and appearing to have exercised it lawfully, should be avoided on account of some irregularity, which could not be known at the time." But he adds, " even in such cases however the return of the officer ought to shew a compliance with the law, or the purchaser would be unable to maintain his property." He had in like manner before stated in the case of *Hammatt* v. *Wyman*, 9 Mass. R. 141, while speaking of the purchaser, " but he cannot make title to the goods without shewing by the return of the execution, that the directions of the law have been observed in the sale."

It cannot however be admitted, that the title of the purchaser, as against the debtor, will depend upon the return of the officer showing, that the directions of the law have been observed in the sale of goods capable of a visible possession and delivery. The judgment against the debtor is considered as satisfied, after the sheriff has taken sufficient personal property of the debtor to pay it. *Mountney* v. *Andrews*, Cro. Eliz. 237. And the sheriff may sell the property after the decease of the debtor. *Clerk* v. *Withers*, 2 Ld. Raymond. 1072. This doctrine is also stated by Parsons C. J. in the case of *Ladd* v. *Blunt*, 4 Mass. R. 403, who observes, " where goods sufficient to satisfy the judgment are seized on a *fieri*

*facias*, the debtor is discharged, even if the sheriff waste the goods, or misapply the money arising from the sale, or does not return his execution. For by a lawful seizure the debtor has lost his property in the goods." The last remark, that the debtor has lost his property in the goods by such a seizure of them, may be considered to be incorrect, according to the case of *Giles* v. *Grover*, 6 Bligh's R. 279. But it will still remain as the unimpeached doctrine of the law, that if the goods be wasted, the debtor will be discharged.

In the case of *Clark* v. *Foxcroft*, 6 Greenl. 96, it was decided, that the sheriff could justify the seizure of goods on final process without showing a return of it; "and that the title of a purchaser under a sheriff's sale on execution might be good, although the execution might not be returned." So in the case of *Bealls* v. *Guernsey*, 8 Johns. R. 54, in an action brought by a purchaser from the debtor, it was decided, that the sheriff might justify the taking of the property on an execution against the debtor, without showing a return of the execution, or any return indorsed upon it. If the sheriff can justify the taking of the property of the debtor on execution, as against a purchaser from him, without proof of any legal disposition of it, a purchaser under his sale by showing only, that he had acquired possession of it through him, might well be permitted also to justify the taking by the sheriff, without exhibiting any legal proof of a sale. The rights of all parties may be fully protected, if a sale of goods, made by the sheriff on execution, be regarded as a legal transfer of the property, although he may not have conformed to the requirements of the statute in making the sale. Any person injured by such proceedings may, by an action against him, obtain ample redress. If the property be not considered as transferred by such a sale, the debtor may receive the benefit of the sale by having the proceeds applied to satisfy his debt, and may then, by his own sale, obtain the value of the goods a second time. While the sheriff may be compelled to pay their full value to the purchaser without the hope of remuneration, although the debtor may have suffered little or no injury from his irregular

proceedings in making the sale. In the case of *Daggett* v. *Adams,* l Greenl. 201, this Court held, that " if it should appear, that the property has been fairly sold and the proceeds applied in payment of the execution, on which they were sold, nominal damages only could be recovered" by the debtor against the officer for conducting the sale in an irregular manner. Such a right to recover damages for a wrong done to him, the debtor, cannot transfer to another person by any attempted sale of the property.

The case of *Sanford* v. *Durfee,* 19 Pick. 485, states that a sale of personal property on execution, was held to be valid without a return of the proceedings of the officer upon the execution.

In this case the sale was made by the sheriff on August 6, 1830, and he returned the execution, on which it was made, satisfied in part by the proceeds of that sale. The debtor received the benefit of that sale by a satisfaction of so much of the judgment, on which the execution issued. Although the house appears to have been sold for a small sum of money, the sheriff must be presumed to have obtained the full value; and if he did not, through any misconduct, he would be liable to make full compensation to the party injured. The plaintiff's title to the house is derived from a subsequent sale by the debtor, made on December 3, 1830; and he presents himself as a purchaser from the debtor after the property had been seized, advertised, and sold on execution and the proceeds of the sale applied in discharge of the debt. He cannot therefore justly claim to assert any other, or greater rights to the property, than the debtor, from whom he derived his title, could have done. And does not therefore exhibit a title superior to that of the purchaser at the sheriff's sale, if that sale be considered as irregularly made. These remarks are not intended to apply to the sale of any description of personal property not tangible, and represented only by documentary evidence of title.

*Judgment on the verdict.*

Tuttle *v.* Gates.

*Note by the Reporter.*—The reasons for setting aside the former verdict were as follows.

EMERY J.— There appears to be a sufficiency of fraud offered to be proved between Ebenezer Tuttle and Rummery on one part, and John R. Tuttle on the other, but the evidence was rejected. The ground on which it was rejected, probably was, that its introduction was not necessary to the decision of the merits of the case. For if the sale were good, by the sheriff to Stephen Emerson, as the property of Ebenezer Tuttle, all other questions are of secondary importance. The strong justice of the case would seem to be, that if the property was never fairly alienated by Ebenezer to John R. Tuttle, some effort might well be justified to bring about a happy retributive justice, so that the creditors of Ebenezer, who were intended to be defrauded, should make the property available to their use.

The conversion by the defendant of the dwellinghouse, for which the action is brought, is abundantly proved. But the contest now seems to be between the creditors of John R. Tuttle, whose estate is represented insolvent, and the creditors of Ebenezer Tuttle, who has administered on John R. Tuttle's estate.

It is somewhat remarkable that there should be so much difficulty in obtaining purchasers of this property, that is now represented to be of the value of $300, and when it was sold, it should bring no more than $27. How far apprehension or conjecture as to the frailty of previous proceedings had influence, it is impossible for us to say. If we can trace out the legal rights of all concerned we shall be satisfied.

The property of one man ought not to be taken to pay the debt of another, without the consent of the true owner, express or implied.

The rights of persons sustaining a representative character, sometimes seem to enable them to commute their and their sureties' responsibility, on their bonds for administering an estate, for a title to the previous estate of the deceased. The executor or administrator may sell the goods for less than the value, or more than the inventoried value, becoming answerable for that amount.

At law the personal property becomes the property of the administrator, and in certain cases, liable for his debts, though not in equity.

The Court consider it important to have the fact ascertained, whether *the administrator himself actually had converted this property to his own use,* and as this does not distinctly appear in the report, they set aside the verdict and grant a new trial for the sole purpose of trying that matter. *Farr* v. *Newman* and note, *Whate* v. *Booth,* 4 T. R. 621 ; *Quick* v. *Staines,* 1 B. & P. 293.